UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


WILLIE JOE JOHNSON, I,            )
                                 )
        Plaintiff,               )
                                 )   Case No. 4:07CV01904 FRB
                                 )
        v.                       )
                                 )
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,              )
                                 )
        Defendant.               )


**MEMORANDUM AND ORDER**


        This matter is on appeal for review of an adverse ruling
by the Social Security Administration.   All matters are pending
before the undersigned United States Magistrate Judge, with consent
of the parties, pursuant to 28 U.S.C. § 636(c).

**I.    Procedural Background**

        On March 3, 2005, Ms. Joy Crawley filed an application
for Supplemental Security Income ("SSI") on behalf of her son,
Willie Joe Johnson I ("plaintiff"), alleging disability as of
February 12, 2005 due to blindness and low vision.   (Tr. 35.)
Plaintiff's application was denied, and on August 1, 2005,
plaintiff requested a hearing before an administrative law judge

1

("ALJ"). (Tr. 21, 26.)[1] A hearing was held on March 19, 2007 before ALJ W. Gary Jewell in St. Louis, Missouri. (Tr. 9; 141-60.) On August 8, 2007, ALJ Jewell issued his decision denying plaintiff's application for benefits. (Tr. 6-14.) Plaintiff requested that defendant agency's Appeals Council review the ALJ's decision, and on October 4, 2007, the Appeals Council denied plaintiff's request. (Tr. 2-5.) The ALJ's decision thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. **Evidence Before the ALJ**

### A. Plaintiff's Testimony

During his administrative hearing, plaintiff was represented by attorney Frank J. Niesen, Jr. The ALJ initially inquired regarding whether the administrative record was complete, and plaintiff's attorney indicated that he was awaiting receipt of school records. (Tr. 144.) The ALJ agreed to hold the record open for 30 days to await receipt of those records. (Tr. 144-45.)

Plaintiff initially responded to questioning from the ALJ. Plaintiff testified that he was born on September 15, 1994, and was 12 years old. (Tr. 145.) He testified that he was four feet, seven inches tall, and weighed 82 pounds. (Tr. 146.) Plaintiff testified that he had recently gained weight, and the ALJ

---

[1]On the Request for Hearing form, plaintiff indicated that her request was late because she had not been receiving all of her mail in a timely fashion. (Tr. 26.) Plaintiff explained that, for a period of about five months, portions of her mail were routinely mis-delivered to the mailbox of another resident of plaintiff's apartment building. Id.

asked plaintiff whether he was "feeling pretty good." <u>Id.</u>
Plaintiff replied that he was. <u>Id.</u>

Plaintiff testified that he was in the sixth grade and
was making "bad" grades, which he identified as D's and C's, in
social studies and science. (Tr. 146-47.) He was not in special
education. (Tr. 147.) Plaintiff testified that he had an accident
and lost his left eye.[2] (Tr. 147-48.) Plaintiff testified that he
was making poor grades because people were "always messing with me
and stuff," and that they talked about his eyes, which angered him.
(Tr. 147.) Plaintiff testified that his teachers knew that other
students were picking on him, but did nothing about it. (Tr. 148.)
Plaintiff testified that he could not concentrate because other
students were picking on him. (Tr. 149.)

Plaintiff testified that he used eye drops, but took no
other medication. (Tr. 149.) He did not play sports because he
worried he might "get poked or something." <u>Id.</u> Plaintiff
testified that he spent his days watching TV and playing Play
Station video games like racing and wrestling. (Tr. 149-50.)

Plaintiff testified that he was good at taking care of
himself. (Tr. 150.) Plaintiff testified that he once ran into a
friend while playing tag, and that he was nearly hit by a bus
because he did not see it on his left side. (Tr. 151.) Plaintiff

_____

[2]The record indicates that, on February 12, 2005, plaintiff was hit in
the left eye with a pellet fired from a BB gun, which necessitated the later
removal of that eye. (Tr. 69-83; 170-74; 257; 251-300.)

testified that he no longer plays tag, and that he cannot ride a bicycle well because he falls due to poor vision.  Id.

Plaintiff testified that he currently does his homework, but did not do his homework when he attended his other school.  (Tr. 152.)  Plaintiff's attorney indicated to the ALJ that he believed that plaintiff recently changed schools due to a move.  Id.  The ALJ confirmed this with plaintiff, who testified that he changed schools because "we moved," but did not know why they moved.  Id.  Plaintiff testified that, at his new school, he was not having as much trouble with children picking on him.  (Tr. 152-53.)

Plaintiff then responded to questions from his attorney.  Plaintiff testified that, almost daily, he suffered headaches localized in the area of his head behind his left eye.  (Tr. 153.)  Plaintiff testified that he takes Tylenol to relieve this pain.  Id.

The ALJ then questioned Ms. Crawley, plaintiff's mother.  Ms. Crawley testified that she and plaintiff moved (causing plaintiff to change schools) because the building they were living in was sold.  (Tr. 153-54.)  Ms. Crawley testified that the move had nothing to do with the fact that plaintiff was being picked on in school.  (Tr. 154.)  Ms. Crawley testified that, before he lost his eye, plaintiff earned As and Bs in school, but that he now had a very hard time focusing and his grades had dropped to Ds.  Id.  Ms. Crawley testified that plaintiff was having behavioral problems in school, which she attributed to the teasing, inasmuch as she

4

believed plaintiff felt the need to constantly protect himself. (Tr. 154-55.) Ms. Crawley testified that plaintiff had been suspended for two or three days due to behavior; had been suspended three times at his previous school; and that he was "getting calls constantly from the new school." (Tr. 155.) She testified that plaintiff got into fights with other children because of the teasing. Id.

The ALJ then asked Ms. Crawley whether she would object to having plaintiff seen by a mental health professional, and Ms. Crawley responded that she would not. Id.

Ms. Crawley testified that plaintiff was not eating well, and that his circumstances had taken an emotional toll on him. (Tr. 157.) She testified that plaintiff was taking over-the-counter Tylenol and used eye drops in his eye, and a cleanser for his prosthetic eye. Id. Ms. Crawley testified that plaintiff had cysts in his left eye area which required surgery unless they burst by themselves. (Tr. 157-58.) Ms. Crawley testified that the BB pellet that hit plaintiff's eye is still in his head. (Tr. 158.)

Ms. Crawley testified that she had seen "a totally different change" in plaintiff since the accident. Id. She testified that plaintiff had not really come to terms with what had happened; that he was not the "same little boy" she knew; and that he was "going through a lot." Id. Ms. Crawley testified that she believed that plaintiff required counseling. Id.

The ALJ then asked plaintiff's attorney whether school

records would be forthcoming, and plaintiff's attorney indicated that he would request them. (Tr. 159.) The ALJ then stated that, if he did not feel that he could pay plaintiff's claim based upon school records alone, he would send plaintiff for a psychological or psychiatric consultative examination, and explained to Ms. Crawley that this would be done at no expense to her. Id. The ALJ then asked Ms. Crawley whether this would be acceptable to her, and she replied in the affirmative. Id.

Ms. Crawley subsequently testified that plaintiff "might catch the corner" of a wall when coming around it, and sometimes suffered bruises. Id. She testified that plaintiff fell down the steps a lot; had trouble when playing outside; and often ran into his friends. (Tr. 159.) She testified that she had to watch plaintiff constantly when he was crossing the street. (Tr. 159-60.) Ms. Crawley also testified that plaintiff had poor balance. (Tr. 160.)

B.   Medical Records

Records from Children's Hospital indicate that plaintiff was seen on February 12, 2005 after suffering a pellet gun shot to his left eye. (Tr. 69-83; 170-74; 251-300.) Plaintiff reported that he and his cousins and a neighbor were playing and were certain the gun was unloaded, and it is indicated that police had ruled the shooting accidental. (Tr. 257.) It was observed that plaintiff had suffered a ruptured left globe, and had no light perception vision. (Tr. 180.) Plaintiff underwent surgical repair

6

of the ruptured globe, and it was indicated that his visual prognosis was poor. (Tr. 180-81.)

Plaintiff returned to Children's Hospital on March 4, 2005, and Susan Culican, M.D. enulcleated, or surgically removed, his left eye, and placed an implant into the orbit. (Tr. 130-31; 182-238.) Dr. Culican wrote that the BB pellet had lodged in plaintiff's orbit in such a manner that it could not be easily removed, and decided to leave it in place. (Tr. 131.)

A Disability Report dated March 14, 2005 indicates that, during plaintiff's interview, he was well-behaved, but tried to answer some of the questions directed to his mother. (Tr. 45.) Plaintiff was observed to have two pairs of glasses: a pair of sunglasses, and a pair of normal glasses. Id. Plaintiff was only observed wearing the sunglasses, which he removed after entering the interviewing area. Id. It is indicated that plaintiff's missing eye was noticeable. Id.

On this same date, Ms. Crawley completed a Function Report, and indicated that she felt plaintiff could not "do things like a normal child would be able to do" like ride a bike. (Tr. 52.) Ms. Crawley did not, however, indicate that there was anything plaintiff was unable to do. Id. She indicated that plaintiff's behavior was not the same as it was before his accident, but indicated that plaintiff had friends his own age, could make new friends, and generally got along with other children and adults. (Tr. 53.) She indicated that plaintiff's impairment

7

did not affect his ability to care for himself. (Tr. 54.) However, she indicated that plaintiff could not keep busy on his own or finish things he started; complete his homework; or complete his chores. (Tr. 55.) Ms. Crawley indicated that plaintiff seemed to have trouble paying attention in class. Id.

The record includes a Teacher Questionnaire dated April 1, 2005, which was completed by Lizatte Jones, plaintiff's fourth-grade teacher. (Tr. 57-64.) In this questionnaire, Ms. Jones provided information about plaintiff's level of functioning in the six domains of functioning that are considered in determining whether a child's impairment functionally equals a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. Id.

Regarding the first domain, Ms. Jones indicated that plaintiff, a fourth-grader, was at a third-grade instructional level in reading and math, and a second-grade instructional level in written language. (Tr. 57.) Ms. Jones found that plaintiff had "an obvious problem" understanding school and content vocabulary, expressing ideas in written form, and learning new material, but indicated that plaintiff had "no problem" making and keeping friends. (Tr. 56.) She identified no "serious" or "very serious" problems. Id.

Regarding the second domain, Ms. Jones identified a

"serious problem" in the areas of carrying out multi-step instructions; waiting to take turns; changing from one activity to another without becoming disruptive; organizing own things or school materials; and working without distracting self or others. (Tr. 59.) She also identified several "obvious" problems, including trouble focusing and completing schoolwork. Regarding the third domain, Ms. Jones identified only one "obvious" problem: taking turns in a conversation. (Tr. 60.) She identified "slight" problems in several areas, and indicated that plaintiff had "no problem" making and keeping friends. Id.

Ms. Jones indicated that no problems were observed in the fourth or fifth domains. (Tr. 61-62.) In the sixth domain, she wrote only that plaintiff frequently complained of stomach pains. (Tr. 63.)

On April 11, 2005, Ms. Crawley completed a Daily Activities Report. (Tr. 65-68.) She indicated that plaintiff spent his days eating, watching television, and playing Play Station video games. (Tr. 65.) She wrote that plaintiff walked into doors, walls and people. Id. She indicated that plaintiff had missed many days of school due to his disability; constantly complained of headaches and dizziness; and could not attend gym class. (Tr. 66.) She wrote that plaintiff took Tylenol 3, and used Tura Lube eye drops and polycarbonate glasses. Id. She wrote that, since beginning medication, plaintiff was "very irritable, less active." Id. Ms. Crawley wrote that plaintiff was very

9

distant and did not want to interact with others, and that he
preferred to be alone. (Tr. 67.) She wrote that plaintiff seemed
to get along poorly with other children because they made fun of
him. (Tr. 68.) Ms. Crawley wrote that plaintiff was "not himself
anymore." Id.

On April 29, 2005, Despine Coulis, M.D., a pediatrician,
completed a Childhood Disability Evaluation Form. (Tr. 102-07.)
Dr. Coulis noted that plaintiff's left eye had been removed due to
trauma, but that he had normal vision in his right eye. (Tr. 102.)

The form solicited Dr. Coulis' opinion regarding
plaintiff's level of functioning in each of the six domains
relevant to the determination of whether a child's impairment
functionally equals a listed impairment. See (Tr. 104-05.) Dr.
Coulis left the first three domains completely blank. (Tr. 104.)
Not only did Dr. Coulis fail to include a narrative detailing her
opinion regarding plaintiff's level of functioning in any of these
domains, she failed to check any of the available boxes indicating
whether plaintiff had any limitations in those areas. See Id.

For the fourth domain, Dr. Coulis indicated that
plaintiff's degree of limitation was "less than marked." (Tr.
105.) Dr. Coulis noted Ms. Crawley's reports regarding plaintiff's
difficulties, and wrote that, because only two months had elapsed
since plaintiff's accident, he may need more time to adjust to
unilateral vision. Id. Dr. Coulis also wrote that plaintiff's
teacher reported no problems in this domain. Id. Dr. Coulis noted

that plaintiff had 20/20 vision in his right eye. Id.

Dr. Coulis opined that plaintiff had "no limitation" in the fifth domain. (Tr. 105.) Dr. Coulis opined that plaintiff had a "marked" limitation in the sixth domain, and noted plaintiff's history of left eye trauma and his complaints of headaches and abdominal pain. Id. Dr. Coulis concluded that plaintiff's impairment did not functionally equal a listed impairment for visual impairment alone because the vision in his remaining eye was normal. (Tr. 106-07.)

Records from Grace Hill Watertower Health Center indicate that plaintiff was seen on August 16, 2006. (Tr. 119.) It was noted that plaintiff had the "significant abnormalities" of a left glass eye, and cavities. Id.

The record includes a letter from Dr. Culican, opining that plaintiff required a new ocular prosthesis to ensure proper expansion of tissues in the bony orbit; reduce atrophy of orbital tissues; encourage proper eyelid function; and to restore plaintiff's normal appearance. (Tr. 109.)[3]

Records from Children's Hospital dated October 28, 2005 indicate that plaintiff reported "some pain" behind his prosthesis every two weeks, and that this pain happened at school. (Tr. 122.)

## III.      The ALJ's Decision

---

[3]This letter is dated "August 24, 2004." (Tr. 109). This is obviously a typographical error, inasmuch as this date predates plaintiff's eye injury. The undersigned will therefore consider this letter as dated August 24, 2006.
* Quaite cite

The ALJ found that plaintiff had never engaged in substantial gainful activity. (Tr. 13.) The ALJ noted that, following a November 2, 1994 application, plaintiff was found disabled on the basis of "failure to thrive," effective as of his birth date, because he had been born prematurely and had a low birth weight. (Tr. 11.) The ALJ noted that plaintiff's disability status was terminated effective October 15, 1998 due to medical improvement. Id.

The ALJ determined that the evidence failed to establish that plaintiff had an impairment or combination of impairments that met or medically equaled a listed impairment. Id. The ALJ noted that plaintiff reported no remaining pain eleven days following surgery. (Tr. 11-12.) The ALJ noted plaintiff's fourth-grade teacher's report that plaintiff was functioning academically at a grade level lower than his actual level, and noted the teacher's observation of plaintiff's frequent complaints of stomach pain. (Tr. 12.) The ALJ reviewed and discussed plaintiff's medical records, noting, inter alia, that it was opined that plaintiff required a new ocular prosthesis, and that he would require periodic cleansing and refitting. Id. The ALJ noted that, although plaintiff reportedly had a cyst near his left eye socket, there was no evidence of subsequent medical intervention. Id.

The ALJ then wrote as follows:

The undersigned arranged for a post-hearing consultative psychological examination for the claimant, to be done at no cost to him, but he

12

failed without good cause to appear for the
examination. A claimant who fails or refuses
without good reason to attend a consultative
physical or mental examination, arranged and
scheduled for him at no cost to him and needed
to more completely determine his disability
claim, may be found not disabled. 20 C.F.R. §
416.918.

Id.

The ALJ recognized that, while plaintiff suffered the

loss of his left eye and had a loss of normal depth perception

which precludes certain motor tasks and activities, he had no

significant pain since about April 2005, and had managed his

prosthesis "pretty well." (Tr. 12.) The ALJ noted that the record

failed to document frequent, severe headaches, and noted that

plaintiff had infrequent medical treatment during the preceding two

years. Id. The ALJ noted that plaintiff had normal sight in his

right eye and had no other significant physical impairments, and

remained able to do "all kinds of normal activities aside from

those restricted by his missing eye." Id. The ALJ noted the

absence of documented uncontrollable side effects of medications.

Id.

The ALJ noted the lack of evidence in the record that

plaintiff was a major disciplinary problem at his school, and the

lack of evidence that plaintiff had any cognitive impairment or

intellectual deficiencies; that he had trouble getting along with

peers or adults; or that he was unable to care for himself. (Tr.

12.) The ALJ then wrote: "[a]s noted above, the claimant failed

without good cause to attend a scheduled psychological examination. Therefore the undersigned finds him to have no credible, medically-established mental impairment or limitation." Id.

The ALJ found that plaintiff, "at worst," had less than marked limitations in acquiring and using information; moving about and manipulating objects; and health and physical well-being. The ALJ found that plaintiff and Ms. Crawley's allegations that plaintiff had marked or extreme limitations was not credible. The ALJ concluded that plaintiff was not disabled, and wrote that, even if it were found that plaintiff had a "marked" limitation in health and physical well-being, he would still have only one "marked" limitation, and no "extreme" ones, and would remain not disabled. (Tr. 12-13.)

IV.     **Discussion**

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

The Commissioner is required to undertake a three-step sequential evaluation process, found at 20 C.F.R. § 416.924(a), when determining whether a child is entitled to SSI benefits. At

the first step, the Commissioner must determine whether the minor child is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner proceeds to the second step and determines whether the child's impairment or combination of impairments is severe. If so, the Commissioner proceeds to step three, at which he considers whether the impairment meets, medically equals, or functionally equals a disability in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing" or "the Listings"). If the child's impairment meets or medically equals a Listing, the child is disabled. A child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a).

If the child's impairment does not meet or medically equal a Listing, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether it "functionally equals" a Listing. This analysis requires the Commissioner to assess the child's developmental capacity in the following six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1); see also Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

In order for the child's impairment to functionally equal

a Listing, it must result in "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. A marked limitation in a domain exists when the child's impairment seriously interferes with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation exists when the child's impairment interferes very seriously with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). Extreme limitation is the rating given to the worst limitations. <u>Id.</u> Absent a finding that the child's impairment functionally equals a listed impairment, the child is not disabled.

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Young o/b/o Trice v. Shalala</u>, 52 F.3d 200 (8th Cir. 1995), <u>citing</u> <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993). Substantial evidence is less than a preponderance, but enough that a reasonable person would find adequate to support the conclusion. <u>Briggs v. Callahan</u>, 139 F.3d 606, 608 (8th Cir. 1998). In evaluating whether substantial evidence supports the decision, this Court must consider evidence which supports the Commissioner's decision, as well as any evidence that fairly detracts from the ALJ's findings. <u>Id.</u>; <u>see</u> <u>also</u> <u>Groeper v. Sullivan</u>, 932 F.2d 1234, 1237 (8th Cir. 1991). However, where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely

because substantial evidence may support a different outcome. Briggs, 139 F.3d at 608; Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (citing Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989)).

In the case at bar, plaintiff claims that the ALJ failed to ensure a fully and fairly developed record. In support, plaintiff argues that the ALJ failed to order a psychological evaluation, inasmuch as the record fails to document that one was ever scheduled. Plaintiff also contends that Dr. Coulis' opinion was incomplete, inasmuch as she ignored the first three domains of functioning, areas in which plaintiff's teacher had opined he had some difficulty.

In response, the Commissioner argues that substantial evidence supports the ALJ's decision, but concedes that the record includes no evidence documenting that a psychological examination was scheduled. The Commissioner also contends that the record "strongly suggests" that plaintiff was offered the examination but declined to participate, and that plaintiff's counsel made no efforts to reschedule the examination. The Commissioner also contends that, even if an examination was not ordered, the record was fully developed as to plaintiff's allegedly disabling impairments, and it supports the ALJ's decision.

For the following reasons, plaintiff's arguments are well-taken.

In his decision, the ALJ indicated that he had arranged

for a consultative psychological examination for plaintiff, but that plaintiff failed to appear. The ALJ considered plaintiff's failure to appear as evidence of plaintiff's non-compliance, and weighed this against plaintiff in making his decision, citing 20 C.F.R. § 416.918.[4] (Tr. 12.) However, the record contains no evidence that plaintiff was ever notified that a consultative examination had been scheduled. The Commissioner's Regulations specify that, if a consultative examination is arranged, the Commissioner will give the claimant "reasonable notice of the date, time, and place the examination or test will be given, and the name of the person or facility who will do it." 20 C.F.R. § 416.917.

Remand is necessary in this case because, while the ALJ appeared to heavily emphasize plaintiff's failure to appear in deciding that he was not disabled, the record contains no evidence that plaintiff was given reasonable notice of the date, time and place of the psychological examination as required by 20 C.F.R. § 416.917 (or that he was ever notified that an examination was scheduled). Finally, because there was no contact between defendant agency and the plaintiff prior to the ALJ's decision, plaintiff was never given an opportunity to show that he had a good reason for failing to appear pursuant to Section 416.918. It

---

[4]This Section provides in relevant part, "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind."

therefore cannot be said that substantial evidence supports the ALJ's decision.

The Commissioner contends that the record "strongly suggests" that an examination was scheduled, but that plaintiff failed to participate. The undersigned disagrees. During the administrative hearing, the ALJ stated that, if he could not pay plaintiff's claim based upon school records, he would send plaintiff for a psychological examination. The ALJ asked plaintiff's mother if she would be agreeable to a decision to send plaintiff for a psychological evaluation, and plaintiff's mother replied in the affirmative. There is nothing in the record documenting that plaintiff or Ms. Crawley was uncooperative with the Commissioner, or with any medical treatment providers.

In determining that plaintiff was not disabled, the ALJ heavily emphasized plaintiff's failure to appear for consultative examination. Absent evidence that an examination was actually scheduled and that plaintiff was given the requisite notice, the undersigned cannot say that the record contains substantial evidence supporting the ALJ's decision.

Despite the Commissioner's arguments to the contrary, it cannot be said that the administrative record as it stands supports the ALJ's conclusion that plaintiff did not have a listing-level impairment. As noted above, Dr. Coulis wholly failed to address any of the first three domains, calling into question whether she even evaluated plaintiff in these areas. In addition, the record

contains evidence that plaintiff's teacher had observed him to exhibit some functional limitations in the same domains Dr. Coulis ignored. While the Commissioner correctly noted several instances in the record supporting the conclusion that plaintiff's impairment is not of listing-level severity, the fact remains that the issue of plaintiff's true level of functioning in the first three domains cannot be meaningfully determined. The undersigned therefore believes that the ALJ could not have made an informed decision about plaintiff's level of functioning without a consultative examination. See Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992).

The Commissioner also contends that the ALJ was not under an obligation to order a consultative psychological examination because plaintiff did not allege a mental impairment in his application. During plaintiff's administrative hearing, however, testimony was adduced that plaintiff's mental status had deteriorated since his injury, and had interfered with his functioning at school. The ALJ was therefore on notice of the need for further inquiry regarding the existence of a mental impairment, and the ALJ in fact indicated on the record his intent to investigate whether plaintiff had a mental impairment. Battles v. Shalala, 36 F.3d 43, 44-45 (8th Cir. 1994) (recognizing that the ALJ has an obligation to investigate a claim not presented in the application for benefits when testimony at the hearing places him on notice of the need for further inquiry).

Because this record does not contain substantial evidence supporting the ALJ's decision, this case shall be remanded to the Commissioner to allow the ALJ to schedule a new consultative examination, and subsequently make a decision on the merits of plaintiff's claim. On remand, the ALJ may also consider soliciting a complete evaluation from Dr. Coulis.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion.

Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of March, 2009.